STATE

v.

Freeman K. KING.

No. 96–13–C.A.

Supreme Court of Rhode Island.

April 23, 1997.

Annie Goldberg, Asst. Atty. General, Aaron Weisman, Asst. Atty. General, for Plaintiff.

Joseph A. Bevilacqua, Jr., Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Freeman K. King, from a judgment of conviction of three counts of assault with intent to murder and one count of possession of cocaine. On appeal, the defendant has raised five issues: (1) the admission of certain evidence allegedly seized pursuant to a defective search warrant, (2) the refusal to sever the assault charges from the defendant's drug charges, (3) the denial of his motions for judgment of acquittal on all counts, (4) the denial of his motion for a new trial, and (5) certain instructions and comments by the trial justice during the final charge to the jury. For the reasons stated below, we deny and dismiss the appeal. A summary of the facts that pertain to this appeal follows.

### Facts and Procedural History

At approximately one o'clock on the afternoon of November 3, 1988, fifteen Woonsocket police officers executed a search warrant for a multifamily dwelling at 71–73 Center Street in Woonsocket, Rhode Island. At trial, Detective Luke Simard (Simard), one of five officers assigned to enter through the front door of the Center Street residence, testified that his team arrived at the house, discovered that the front door was locked, knocked the door open with a metal battering ram, and entered the building. Simard

testified that he, Detective Guy Baillargeon, and Detective Luke Gallant "yelled police" as they forced open the door and entered the house. Simard further stated that all the officers involved in the execution of the warrant wore badges in order to identify themselves as police officers.

According to Simard, the officers were still "yelling police" and were about to "take down" a second door when that door was opened by a woman. Simard related that the officers identified themselves and entered a front parlor area of the apartment, where they discovered four people, including two children. While other officers secured these four individuals, Simard and Lieutenant William Shea (Shea) proceeded down a hallway to secure the rest of the apartment.

Simard testified that when he encountered another closed door, he turned its handle, and upon feeling resistance, he "yelled police" and announced that he "had a locked door." Simard explained that because the house was not yet secured and a closed door might indicate that "somebody was inside the room," the locked-door announcement would alert other officers to take "precautionary measure[s]." At that point, as he kicked open the door into the bedroom, Simard observed defendant approximately nine or ten feet away with "a handgun aimed at me [Simard]." Simard testified that as defendant's gun "went off," he saw a "flash" and dived to the floor.

At that point Shea, believing Simard had been hit, radioed for a rescue vehicle and then fired one round into the bedroom with his shotgun. Shea testified that two more shots were subsequently fired from the bedroom, following which Simard fired three shots and Shea fired one more round into the same room. The defendant then called out that he had been shot. Lieutenant Harold Marzini (Marzini) shouted several commands with which defendant complied; defendant then was handcuffed and taken from the scene by rescue personnel. Simard, Shea, and Marzini testified that officers had continued to "yell police" throughout the entire episode. Marzini explained that, in the circumstances, "I want people to know who I am."

The police searched the house and discovered two bags of cash, one containing $800 and the other containing $1,200, above the suspended ceiling in the bedroom. It was stipulated at trial that a plastic bag containing ten vials of cocaine was found between the mattress and the box spring in the bedroom and that three vials of cocaine were found in a purse in the same room. It was further stipulated that thirteen vials of cocaine constituted an amount "consistent with personal use."

On February 8, 1989, defendant was charged by information with three counts of assault with intent to murder (counts 1, 2, and 3), one count of possession of cocaine with intent to deliver (count 4), one count of maintaining a common nuisance (count 5), one count of possession of a firearm while possessing cocaine and marijuana with intent to deliver, (count 6), one count of receiving stolen property, to wit, a gun (count 7), and one count of possession of marijuana (count 8). Prior to the commencement of trial, count 7 was dismissed, pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. At the close of the state's case, the trial justice granted defendant's motion for judgment of acquittal on counts 5, 6, and 8. The defendant's motion for judgment of acquittal on count 4 was also granted, although the lesser included offense of simple possession remained.

On November 17, 1989, a jury found defendant guilty of the remaining three counts of assault with intent to murder and one count of possession of cocaine. The defendant was sentenced to three consecutive terms of twenty years, six years to serve and fourteen years suspended with probation, on the assault-with-intent-to-murder counts, and a concurrent term of one year on the possession charge. Following sentencing, defendant filed this appeal, pursuant to G.L.1956 § 9–24–32.

### Motion to Suppress

■ The first question before us is whether the trial justice erred in finding that there was probable cause for the issuance of the search warrant. The Fourth Amendment to the United States Constitution and article 1,

section 6, of the Rhode Island Constitution prohibit the issuance of a search warrant absent a showing of probable cause. *State v. Pratt,* 641 A.2d 732, 736 (R.I.1994). In determining whether probable cause exists, the issuing magistrate applies the totality-of-the-circumstances test and makes a "practical commonsense" evaluation about whether all the facts and circumstances set forth in a particular affidavit, together with all reasonable inferences that can be drawn therefrom, establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). *Accord State v. Ricci,* 472 A.2d 291, 295 (R.I.1984).

■ It is well settled that, under the totality-of-the-circumstances test, "an informant's veracity, reliability, and basis of knowledge remain 'highly relevant.'" *Ricci,* 472 A.2d at 295 (quoting *Illinois v. Gates,* 462 U.S. at 230, 103 S.Ct. at 2327, 76 L.Ed.2d at 542). A deficiency in veracity or reliability, however, "may be compensated for * * * by a strong showing as to the [basis of knowledge], or by some other indicia of reliability." *Illinois v. Gates,* 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d at 545. The totality-of-the-circumstances approach also recognizes the probative value of the "corroboration of details of an informant's tip by independent police work." *Id.* at 241, 103 S.Ct. at 2334, 76 L.Ed.2d at 550.

■ Moreover, this Court's "after-the-fact scrutiny * * * of the sufficiency of an affidavit should not take the form of *de novo* review." *Id.* at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. Rather, we give deference to the issuing magistrate's determination of probable cause and confine ourselves to reviewing whether the magistrate had a substantial basis for his finding of probable cause. *Id.* Although "the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed *de novo*," *Ornelas v. United States,* 517 U.S. ——, ——, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911, 916 (1996), a deferential standard of review should be applied when reviewing a magistrate's decision to issue a warrant because "[t]he Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant,' * * * and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches." *Id.* at ——, 116 S.Ct. at 1663, 134 L.Ed.2d at 920 (quoting *Illinois v. Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547).

In the instant case, defendant argued that the trial justice erred by denying his motion to suppress because the information within the four corners of the affidavit was insufficient to establish probable cause. Specifically, defendant asserted that the affidavit lacked any evidence of the informants' reliability or basis of knowledge and offered no evidence to corroborate the informants' observations independently.

In this case, the judge who issued the search warrant had before him an affidavit from Captain Maurice H. Jalette (Jalette) of the Woonsocket police department. The affidavit stated that a "reliable source" had informed Lieutenant George Gould that crack cocaine was being sold "to kids" "outside of a back window" of the first-floor apartment at 71–73 Center Street. The affidavit further asserted that police officers had that address under surveillance and had reported that the area surrounding the building was "patrolled by lookouts" who approach vehicles and negotiate price with potential customers. The officers also reported that the lookouts "seldom enter the building to get the Crack" and that this method of dealing was most likely being used to "insulate" the main dealers, including defendant, who was named in the affidavit, from "normal investigative procedures" recently utilized by the Woonsocket police.

The affidavit further stated that a second informant, known to Jalette as a "concerned citizen," told police that she had recently "kicked [a cocaine] habit." This second informant reported that the occupants of the apartment were "associated with a group dealing large quantities of cocaine," and she related detailed information about the delivery, distribution, and price of the drugs. She also reported that she had observed hand-

guns in the apartment and had heard the occupants discuss "using the weapons to protect themselves, and to kill informants." Last, the affidavit stated that Jalette himself had observed "known drug users and runners enter and exit this apartment," and he identified five such individuals by name.

■ The affidavit, therefore, revealed information related to police by "a reliable source" and "a concerned citizen," both of whom were known to the police. The notably detailed information provided by the second informant resulted from her own visits to the premises where the illegal activity was allegedly conducted. The reports of both informants were supported by the independent corroborative observations of the Woonsocket police.

■ The defendant also contended that the affidavit was defective because it failed to specify the dates or the times of the observations by the informants, thereby making it impossible for the issuing judge to determine whether probable cause existed at the time he issued the warrant. "Although the existence of probable cause must be found within the 'four corners' of an affidavit submitted in support of the issuance of a warrant," *Pratt*, 641 A.2d at 736 (quoting *State v. Joseph*, 114 R.I. 596, 603, 337 A.2d 523, 527 (1975)), a judicial officer is entitled to draw all reasonable inferences from the affidavit at the time the probable-cause determination is made. *Id.; Ricci*, 472 A.2d at 297. Our deferential review of the probable-cause determination by the judge who issued the warrant leads us to conclude that the affidavit provided a substantial basis for the judge to conclude "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. Moreover, the affidavit attested to defendant's possession and distribution of narcotics which would lead to the reasonable inference that defendant was involved in an ongoing drug operation on the premises in question.

In sum, our deferential review of the sufficiency of the affidavit has assured us that sufficient information was presented to the issuing magistrate to support his determination that there was "a fair probability that contraband or evidence of a crime" would be found in defendant's residence. *Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Consequently, the affidavit provided more than "mere conclusory statement[s]." *Id.* at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 549. Rather, in the totality of the circumstances, the affidavit provided the magistrate with a substantial basis for determining the existence of probable cause.

■ We have considered defendant's argument that the search warrant was defective on its face because it failed to describe with particularity the items to be seized and find it to be without merit. The warrant revealed a list of specific "property or articles to be searched for," including various narcotics, narcotic paraphernalia, records of sales and/or purchases, materials for packaging and distribution, safe-deposit keys, bank records, and utility bills. Therefore, the description of the items to be seized was "specific enough to indicate to the officers the proper scope of their search." *State v. DeLaurier*, 533 A.2d 1167, 1171 (R.I.1987).

We conclude, therefore, that issuance of the search warrant was supported by probable cause and that the warrant was not defective. Consequently, the trial justice properly denied defendant's motion to suppress the fruits of the search that was conducted pursuant to that warrant.

### Motion to Sever

Prior to trial, defendant moved to sever his three assault-with-intent-to-murder charges from his drug and firearms charges, pursuant to Rule 14 of the Superior Court Rules of Criminal Procedure. The trial justice found that defendant would suffer no prejudice if these counts were tried together, and he denied defendant's motion to sever. On appeal, defendant argued that the trial justice improperly denied his motion to sever the assault charges from the narcotics and firearms charges because trying them together had prejudiced defendant to the point where he was denied his right to a fair trial.

■ Rule 8(a) of the Superior Court Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment, information, or complaint "if the

offenses charged * * * are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." In the case before us, the charges were based on a single event, the actions of defendant and the contraband in his possession at the time police entered his residence to execute a search warrant. There is no question that the joinder of these offenses was proper.

█ This assertion does not end our inquiry because even in cases in which offenses are appropriately joined in a single indictment, "a defendant may certainly move for severance of some of the indictment counts for the purposes of trial when he is able to show such prejudice as might constitute a denial of his right to a fair trial, pursuant to Rule 14 of the Superior Court Rules of Criminal Procedure." *State v. LaRoche,* 683 A.2d 989, 998 (R.I.1996).

It is well settled, however, that "a defendant is not entitled to a severance as a matter of right" and that the granting or the denying of a defendant's motion to sever lies within the sound discretion of the trial justice. *State v. Tarvis,* 465 A.2d 164, 172 (R.I.1983). "To prevail in demonstrating that a trial justice has abused this discretion, a defendant must show that the trial justice's denial of the motion to sever prejudiced the defendant to such a degree that he or she was denied a fair trial." *State v. Eddy,* 519 A.2d 1137, 1140 (R.I.1987).

█ In this case, defendant asserted that severance was "the only way for [defendant's] theory of self-defense and/or lack of specific intent to commit murder to be properly considered by the jury," and he claimed that the refusal to sever "could only bring forth the most nefarious of presumption[s] and prejudice." We disagree and hold that defendant's contention that the trial justice's denial of his motion to sever created "an overwhelming potential for prejudice" falls well short of the requisite affirmative showing that "defendant did, in fact, suffer prejudice sufficiently substantial to impinge upon his right to a fair trial." *State v. Sharbuno,* 120 R.I. 714, 717, 390 A.2d 915, 917 (1978) (citing *State v. Patriarca,* 112 R.I. 14, 308

A.2d 300 (1973)). Therefore, we conclude that the trial justice did not abuse his discretion in denying defendant's motion to sever.

## Motions for Judgment of Acquittal

The defendant next argued that the trial justice erred by denying his motion for judgment of acquittal on the assault-with-intent-to-murder charges because the state failed to prove that defendant "had the necessary specific intent to kill [the] officers." The defendant contended that the evidence demonstrated that the gunshots fired by defendant "were discharged in self-defense and not as a deliberate intended assault on [the police officers'] vital body parts." In support of his contention, defendant relied on the fact that the shots he fired "did not hit any of the officers and did not threaten vital parts of their bodies." The defendant asserted that, at best, the evidence showed that an assault with a deadly weapon had occurred.

"In considering a motion for judgment of acquittal, a trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, in fact giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt." *State v. Snow,* 670 A.2d 239, 243 (R.I.1996). "If the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt, the motion for judgment of acquittal must be denied." *Id.* "In reviewing a trial justice's denial of such a motion, this Court applies the same standard as the tribunal below." *Id.*

█ In the instant case, there was uncontradicted testimony that defendant "had the gun aimed" when Simard kicked open the bedroom door and that defendant fired the first shot. Marzini testified that he saw "the flash" as defendant's gun was fired and that the first bullet "went by [his] head" before hitting the wall beside him. Viewing the totality of this evidence in the light most favorable to the state, we concur with the trial justice's determination that this was "a case that should go to the jury." Therefore,

we hold that the trial justice properly denied defendant's motion for judgment of acquittal on counts 1, 2, and 3.

The defendant also challenged the trial justice's denial of his motion for judgment of acquittal on the possession-of-cocaine charge, arguing that there was "no proof of possession" because there was no evidence that defendant "lived in the apartment, leased it out, or was the lessee of the premises."

It is well settled in this jurisdiction that a person can be found to have constructively possessed a narcotic that was not in his or her "immediate physical possession" if the state proves that defendant had "knowledge of the presence of the item" and "intended to exercise control over the item." *State v. Hernandez*, 641 A.2d 62, 70 (R.I. 1994) (citing *State v. Mercado*, 635 A.2d 260, 262 (R.I.1993)). Proof of knowledge and intent to exercise control may be inferred from the totality of the circumstances. *Id.* (citing *State v. Jenison*, 442 A.2d 866, 875 (R.I. 1982)).

Our review of the record revealed that a plastic bag containing ten vials of cocaine was found under the mattress on which defendant was lying at the time police entered the apartment to execute the search warrant. In addition, a large amount of cash was discovered above the ceiling of the same room. We concur with the trial justice's conclusion that the fact that defendant had fired shots from the bedroom at police officers supported an inference that defendant had a possessory interest in the contents of the room. It is our conclusion that, viewing the totality of the evidence in the light most favorable to the state and drawing therefrom all reasonable inferences consistent with guilt, a juror could reasonably find that defendant had constructive possession of the narcotics in question. Consequently, the trial justice did not err in denying defendant's motion for judgment of acquittal on the possession charge.

## Motion for a New Trial

The defendant next contended that the trial justice should have granted his motion for a new trial because the evidence present-

ed at trial failed to prove that defendant was guilty of assault with intent to murder. "In ruling on a motion for a new trial, 'the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence.'" *Snow*, 670 A.2d at 243 (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994)). "If, after an independent review of the evidence, the trial justice makes the same determination as the jury, he or she should deny the motion for a new trial." *Id.* at 244. "Whenever the trial justice has followed the requisite procedure and articulated a sufficient rationale for denying a motion for a new trial, the decision will not be disturbed unless the trial justice has 'overlooked or misconceived material evidence relating to a critical issue or was otherwise clearly wrong.'" *Id.* (quoting *State v. Caruolo*, 524 A.2d 575, 585 (R.I.1987)).

Our review of the record revealed that the trial justice independently assessed the credibility of the witnesses and the weight of the evidence, reached the same conclusion that the jury reached, and thus properly denied defendant's motion for a new trial. In reaching his decision, the trial justice neither overlooked nor misconceived material evidence, nor was he otherwise clearly wrong. Therefore, his decision on this matter will not be disturbed.

## Instructions to the Jury

Last, the defendant argued that certain of the trial justice's instructions to the jury constituted impermissible comment on the quality of the evidence and/or on the credibility of the witnesses. Specifically, the defendant challenged the trial justice's assertion that if a witness "had made a statement on the witness stand and a different statement at an earlier point in time, this does not create a reasonable doubt" and his comment that "allegedly one of the bullets came close to the head of one of the police officers."

In response to challenges to jury instructions, "we examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them." *State v. Marini*, 638 A.2d 507, 517 (R.I.1994) (citing

*State v. Gomes,* 604 A.2d 1249, 1256 (R.I. 1992)). "We will not examine single sentences. Rather, the challenged portions must be examined in the context in which they were rendered." *Id.* (quoting *State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986)). In this case, our review of the record revealed that the trial justice's first statement was made within the context of instructions on the credibility of witnesses and his second statement was made within the context of instructions on the definitions of assault and battery. We conclude, therefore, that the defendant's argument that the trial justice impermissibly invaded the province of the jury by making these two statements is without merit.

In summary, for the foregoing reasons, the defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed. The papers in this case are remanded to the Superior Court.