STATE

v.

**Thomas P. BYRNE.**

No. 2008–27–C.A.

Supreme Court of Rhode Island.

June 19, 2009.

 

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

Richard C. Bicki, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

This case came before the Supreme Court on April 7, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are satisfied that cause has not been shown, and we shall decide this appeal without further briefing and argument.

On motion of defendant, Thomas P. Byrne (Byrne or defendant), a justice of the Superior Court issued a written decision granting a motion to suppress evidence obtained during the execution of a search warrant at defendant's home. The state appealed, and argues before this Court that the affidavit submitted in support of the search warrant provided sufficient probable cause to conclude that the fruits of a criminal offense could be found at defendant's home. We agree. For the reasons set forth in this opinion, we vacate the order of the Superior Court.

### I

### Facts and Travel

In passing on defendant's motion to suppress, the trial justice was confronted with the following facts. On September 18, 2005, Roxanne and Simon Smith reported an incident to the Warren Police Department involving defendant and their daughter that, they alleged, occurred the previous day. Roxanne informed Det. Joel Camara (Det. Camara) that on the morning of September 17, 2005, Roxanne, Simon, and their ten-year-old daughter,

Barbara,[1] went to the Off Center Coffee House (coffee house) in Warren, an establishment that was owned by defendant, with whom the family apparently was acquainted. Although Roxanne and Simon left the coffee house two hours later, young Barbara asked to stay behind to assist the staff in preparing food and serving customers. The defendant was present during Barbara's visit.

After her parents left, defendant allegedly asked Barbara if she wanted to see the "museum" downstairs. When they arrived in the basement, defendant asked Barbara, who was wearing what was described as a miniskirt, to kneel beside his dog so that he could take a photograph. Barbara knelt on the floor next to the dog; but before defendant snapped a picture, he insisted that she lift her knees into a crouching position. Although she complied, defendant was not satisfied with the shot and instructed her to stand up for more photographs. According to the affidavit, when Barbara stood up, defendant dropped to one knee, fully extended the camera lens, and focused the camera on the area below Barbara's stomach.

Thereafter, defendant led Barbara upstairs and asked her to clean the lamps that were hanging from the ceiling. In order to reach the lamps, she had to stand on top of a table. According to the affidavit, once she was in position, Barbara saw defendant's reflection in a mirror on a nearby wall and realized that he was aiming the camera lens underneath her skirt. When she turned around to face him, defendant casually walked away, while whistling a tune. Barbara's parents were un-

aware of the incident until later that day, when the family prepared to leave for Boston, Massachusetts, to attend a function. Roxanne reported that when her daughter entered her automobile for the drive, Barbara put her head down and burst into tears.

Detective Camara included the foregoing allegations in an affidavit in support of two search warrants—one for the coffee house, and the second for defendant's residence in Barrington.[2] On September 20, 2005, three days after the alleged incident, the chief judge of the District Court authorized the search warrants. Members of the Warren and Barrington Police Departments searched both locations later that day. The police discovered a clear plastic bag of marijuana that was situated on top of $567 in cash in defendant's bedroom; they also found a scale[3] and two cameras, one of which was digital. On the back deck outside the home, the police found a potted marijuana plant. All of these items were seized; no contraband was found at the coffee house.

By examining the information stored on the digital camera with software designed to recover deleted material, the police were able to extract approximately one-hundred photographs, many of which depicted the backsides of women who were in public areas and apparently unaware of defendant's camera prowess. One picture, however, showed Barbara kneeling beside defendant's dog, and three others depicted the area underneath a girl's skirt. The undergarment in these photos matched the description of Barbara's clothing, and the

---

1.  We use fictitious names for the alleged child victim and her parents to afford the family a measure of privacy.

2.  Detective Camara requested permission for the police to seize "any and all camera(s), computer(s), lap tops, electronic and digital

data storage devices such as zip drives, floppy disks, CD's, DVD's, etc.[,] [a]s well as contraband or evidence of criminal activity."

3.  The police concluded that the scale was of the kind often used for weighing marijuana.

police concluded that these were the photographs defendant had taken of the child.

The defendant subsequently was charged by way of two criminal informations: one charged that defendant (1) unlawfully cultivated a controlled substance, marijuana, and (2) unlawfully possessed marijuana;[4] the second criminal information charged that defendant violated G.L. 1956 § 11–64–2, a felony, by using "an imagining device to capture, record and store visual images of the intimate area of a ten year old girl, without her knowledge or consent under circumstances in which she would have a reasonable expectation of privacy, all for the purpose of sexual arousal, gratification or stimulation."[5]

The defendant moved in both cases to suppress the evidence found at his Barrington residence, and after a hearing, the trial justice, in a written decision, ordered the evidence suppressed. The trial justice concluded that Det. Camara's affidavit failed to establish a nexus between the items to be seized—cameras and photographic images—and the location to be searched, defendant's home. He noted that, although the affidavit detailed the purported incident that took place at the coffee house, it referred to defendant's home only in the last paragraph.[6] Furthermore, the trial justice determined that the facts articulated in the affidavit were insufficient to draw a reasonable inference that "contraband or evidence of a crime would be found at the defendant's residence in Barrington." The trial justice found that the warrant to search defendant's home was not supported by the requisite probable cause, and he therefore suppressed the evidence seized at that location. The state timely appealed pursuant to G.L. 1956 § 9–24–32.[7]

## II

### The Validity of the Warrant to Search Byrne's Home

#### A

#### Standard of Review

■ We begin by noting that, in the case before us, a search warrant was issued based on a sworn affidavit by a police officer that was submitted to a neutral and detached judicial officer, a requirement envisioned by the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution.[8] "The Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution, prohibit the issuance of a search warrant absent a showing of probable cause." *State v. Verrecchia*, 880 A.2d 89, 94 (R.I.

---

4. P2/05–3433A.

5. P2/05–3432A.

6. The warrant described defendant's home in detail.

7. General Laws 1956 § 9–24–32 states, in pertinent part:

   "In any criminal proceeding, the attorney general shall have the right to object to any finding, ruling, decision, order, or judgment of the superior court or family court, and the attorney general may appeal the findings, rulings, decisions, orders, or judgments to the supreme court at any time

before the defendant has been placed in jeopardy * * *."

8. This requirement is not without certain narrowly drawn exceptions. *See, e.g., State v. Barkmeyer*, 949 A.2d 984, 996–97 (R.I.2008) (a warrantless search of a home is permissible when an occupant who has authority over the premises voluntarily consents to the search); *State v. Portes*, 840 A.2d 1131, 1136 (R.I.2004) (warrantless entry of a home is permissible in exigent circumstances when the police are in pursuit of a criminal that they have probable cause to believe committed an offense, or in an emergency requiring preventive action). None of these exceptions apply in this case.

2005); *see also* Super. R.Crim. P. 41(c); *State v. Pratt,* 641 A.2d 732, 736 (R.I.1994). Probable cause must be ascertained within the four corners of the affidavit prepared in support of the warrant, *State v. Joseph,* 114 R.I. 596, 603, 337 A.2d 523, 527 (1975), and based on the totality of the circumstances presented in the affidavit. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. King,* 693 A.2d 658, 661 (R.I.1997); *Pratt,* 641 A.2d at 736. In making this determination, the issuing magistrate must review the affidavit and, based on the facts contained therein, together with the reasonable inferences that may be drawn from those facts, make a practical, commonsense determination as to whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *see also King,* 693 A.2d at 661; *Pratt,* 641 A.2d at 736.

■ It is incumbent upon the trial justice and the reviewing court to accord great deference to the issuing magistrate's probable-cause determination, so long as there is a showing of "a substantial basis from which to discern probable cause." *State v. Correia,* 707 A.2d 1245, 1249 (R.I. 1998); *see also Gates,* 462 U.S. at 236, 103 S.Ct. 2317; *Verrecchia,* 880 A.2d at 95. In explaining this deferential standard of review, we succinctly have stated:

"[T]his Court's 'after-the-fact scrutiny * * * of the sufficiency of an affidavit should not take the form of *de novo*

review.' [*Gates,* 462 U.S. at 236, 103 S.Ct. 2317]. Rather, we give deference to the issuing magistrate's determination of probable cause and confine ourselves to reviewing whether the magistrate had a substantial basis for his finding of probable cause. *Id.* Although 'the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed *de novo,*' *Ornelas v. United States,* 517 U.S. 690[, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)], a deferential standard of review should be applied when reviewing a magistrate's decision to issue a warrant because '[t]he Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant, * * * and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches.' [*Id.* at 699, 116 S.Ct. 1657 (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317)]." *King,* 693 A.2d at 661 (internal quotation marks omitted).[9]

■ Because there is "a strong preference for searches conducted pursuant to a warrant," affidavits are to be interpreted in a realistic fashion that is consistent with common sense, and not subject to rigorous and hypertechnical scrutiny. *See Gates,* 462 U.S. at 235–39, 103 S.Ct. 2317 (discuss-

9. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court elaborated on the importance of adhering to a deferential standard of review:

"If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time

of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring 'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.* at 236, 103 S.Ct. 2317 (quoting *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

ing the United States Supreme Court's reasoning for abandoning the two-pronged test established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of a practical approach for determining whether an affidavit supplies sufficient probable cause). In *Verrecchia*, 880 A.2d at 94, we declared in the clearest of terms that "the approach to the probable cause question should be pragmatic and flexible." "The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit," and "[i]n doubtful cases, the reviewing court should give preference to the validity of the warrant." *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.1985); *see also United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("the resolution of doubtful or marginal cases * * * should be largely determined by the preference to be accorded to warrants").

We further note that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Finally, we review a trial justice's determination of the existence (or nonexistence) of probable cause *de novo*. *Verrecchia*, 880 A.2d at 95; *Correia*, 707 A.2d at 1249. With these principles in mind, we begin our analysis.

**B**

**Analysis**

The singular issue on appeal is whether the information set forth in Det. Camara's affidavit established a sufficient nexus between the items sought in the

warrant—including the camera—and defendant's home in Barrington to allow the chief judge of the District Court, the issuing magistrate in this case, to draw a reasonable inference of probable cause. The state argues that, because it was "fairly probable" that defendant would take the camera containing digital images of Barbara's intimate areas to his home, the chief judge correctly decided that there was sufficient probable cause to search that location. As such, the state contends that the trial justice failed to accord the requisite deference to the District Court judge's earlier probable-cause determination, and committed reversible error when he excluded the fruits of the search.

In this case, the trial justice declared:
"[T]here are no facts articulated in [Det.] Camara's affidavit that support a reasonable inference that contraband or evidence of a crime would be found at the defendant's residence in Barrington. In the simplest of terms, it was not reasonable to infer that Byrne took the contraband discussed in [Det.] Camara's affidavit to his residence without any *underlying facts* from which such an inference could 'logically and reasonably be drawn.' Therefore, *the affiant's failure to allege any facts connecting the property to be seized with the location to be searched is fatal.*" (Emphases added.)

The trial justice failed to articulate what additional underlying facts were, in his view, necessary to establish a reasonable inference that defendant took the camera home. In this case, the affiant alleged that defendant took several pictures of the child-victim's undergarments with a camera and further alleged that, in several shots, the camera was focused under the child's skirt. Although the alleged crime occurred at defendant's place of business, and the only reference to defen-

dant's home was in the final paragraph of the affidavit (although the home was described with particularity in the warrant), it is our view that a reasonable inference could be drawn from these facts that the camera—the instrumentality of the crime and a handheld, easily transportable item of personal property—could be found at defendant's residence. Short of surveillance or actual observation of defendant taking the camera home, we are hard-pressed to envision what additional facts connecting the camera to defendant's home could be alleged to support this inference. Evidence of actual observation is not a constitutional prerequisite for a finding of probable cause.[10]

Our learned colleagues on the Massachusetts Supreme Judicial Court recently explained that "[t]he requisite nexus between the criminal article or activity described in the affidavit and the place to be searched need not be based on direct observation." *Commonwealth v. Anthony*, 451 Mass. 59, 883 N.E.2d 918, 926 (2008). Rather, it "may be found in 'the type of crime, the nature of the * * * items [sought], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [items of the sort sought in the warrant].'" *Id.* (quoting *Commonwealth v. Cinelli*, 389 Mass. 197, 449 N.E.2d 1207, 1216 (1983)); *see also United*

States v. Rambis, 686 F.2d 620, 624 (7th Cir.1982); *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir.1970); *State v. Pierce*, 358 N.W.2d 672, 673 (Minn.1984). We agree with the holding in *Anthony*. This Court never has declared that direct observation of the suspect with the contraband at or near the area to be searched is required for a finding of probable cause; such a prerequisite is neither pragmatic nor flexible. *Verrecchia*, 880 A.2d at 94.

In this case, defendant was charged, *inter alia*, with violating the video voyeurism statute, § 11–64–2, which states in pertinent part:

"(1) A person is guilty of video voyeurism when, for the purpose of sexual arousal, gratification or stimulation, such person:

"(a) Uses, installs or permits the use or installation of an imaging device to capture, record, store or transmit visual images of the intimate areas of another person without that other person's knowledge and consent, and under circumstances in which that other person would have a reasonable expectation of privacy."

The defendant allegedly photographed the undergarments of a ten-year-old girl. Although these images may not rise to the level of child pornography—a question that is not before us[11]—the similarities be-

---

**10.** In support of his ruling that the affidavit was devoid of any facts from which a reasonable inference could be made that the contraband was at defendant's home, the trial justice cited *State v. Verrecchia*, 880 A.2d 89 (R.I.2005), and *State v. King*, 693 A.2d 658 (R.I.1997), cases in which the reasonable inferences that established the requisite nexus were based on police surveillance and direct observation of the defendant (*Verrecchia*) or illegal activity (*King*) at the place to the searched. These cases do not, however, stand for the proposition that only police surveillance or direct observation of the defendant's activities at or around the location to be

searched serves to fulfill the constitutional threshold from which a reasonable inference can be made that the items sought to be seized are at that location. As we explain in this opinion, direct observation of a suspect at or near the location to be searched is not a prerequisite to the establishment of reasonable inferences.

**11.** We observe that the United States Court of Appeals for the Third Circuit has held, in the context of a federal child pornography statute, that visual depictions of clothed genitalia may fall within the meaning of " 'lascivious exhibition of the genitals or pubic area,' " and

tween this case and child pornography prosecutions cannot escape us. "[V]iewing and possessing child pornography is, by its nature, a solitary and secretive crime." *State v. Brennan,* 674 N.W.2d 200, 206 (Minn.Ct.App.2004).

"The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence." *United States v. Riccardi,* 405 F.3d 852, 861 (10th Cir.2005) (quoting *United States v. Lamb,* 945 F.Supp. 441, 460 (N.D.N.Y.1996)).

*See also State v. Felix,* 942 So.2d 5, 10 (Fla.Dist.Ct.App.2006) (quoting same).[12] We agree with this assessment, and we are satisfied that the nature of defendant's alleged crime supports a reasonable inference that he would transport the illicit images of the child to his Barrington residence for perusal in the privacy of his own home.

In addition, we conclude that the nature of the instrumentality sought to be seized—a camera—supports a reasonable inference that the camera and the images it contained could be found at defendant's residence. As the trial justice noted:

"Photographic and data storage technology has advanced to the point where it is within anyone's grasp—literally—to capture digital images with palm-sized cameras and cell phones, and quickly and quietly store them on personal computers for private viewing or public distribution." Common sense suggests that a camera is a small, easily transportable item of personal property. *See Brennan,* 674 N.W.2d at 206 (it was reasonable to infer that, because of the ease with which the defendant could transport his portable work laptop to his house, "the illicit images found on the laptop would also be found on [the defendant]'s home computer"). Equally noteworthy is that there is no indication in this case that the camera was work related or in any way connected to the operation of defendant's coffee house. *Cf. State v. Ricci,* 472 A.2d 291, 297–98 (R.I.1984) (a reasonable inference could be drawn that stolen earrings were located at the defendant's place of business based on information that the defendant sold the contraband in the ordinary course of business to a known customer of jewelry manufacturers, even though the sale did not take place at that location). Here, all that was necessary was a reasonable inference that defendant took his camera home. In short, we are of the opinion that the allegations set forth in Det. Camara's affidavit permitted a reasonable inference that the camera and the incriminating photographs likely were to be found at defendant's residence.[13] *See United States v. Summage,*

thereby qualify as child pornography. *United States v. Knox,* 32 F.3d 733, 743–51 (3d Cir. 1994). Rhode Island's child pornography statute, G.L. 1956 § 11–9–1.3, contains similar language. *See* § 11–9–1.3(c)(6)(v) (defining "sexually explicit conduct" as, *inter alia,* "[g]raphic or lascivious exhibition of the genitals or pubic area of any person").

12. Although these cases involved the question of whether the information contained within the affidavit was too stale to support a finding of probable cause, we are of the opinion that the observations made by these courts in regard to the activities of people who collect or disseminate child pornography are relevant to the case at hand.

13. The defendant argues that the issuing Dis-

481 F.3d 1075, 1078 (8th Cir.2007) (it was reasonable to infer that sexually explicit video and photographs taken by the defendant would be located at his new residence, even though he lived elsewhere at the time of the incident at issue).

Lastly, defendant argues, and the trial justice found, that Det. Camara's affidavit failed to establish an adequate nexus between the camera and defendant's home in large part because the affidavit was devoid of any "underlying facts" from which an inference could be drawn establishing that the camera was at that location. For example, defendant points out that the affidavit did not show that defendant's home was placed under surveillance or that the police followed defendant from the coffee house to his residence while he was carrying the camera; nor did it set forth any facts that placed defendant at home. However, a nexus between the items to be seized and the place to be searched does not rise or fall on direct observations, or, as the trial justice found, on the existence of "underlying facts" connecting the two. *United States v. McKinney*, 758 F.2d 1036, 1043 (5th Cir.1985); *Rambis*, 686 F.2d at 623–24; *Lucarz*, 430 F.2d at 1055; *Anthony*, 883 N.E.2d at 926; *see also Pratt*, 641 A.2d at 736 (issuing magistrate may draw reasonable inferences from all the facts contained in the affidavit). Because a judicial officer may draw reasonable inferences from the na-

ture of the crime alleged in the affidavit and the instrumentality used in its commission, we are satisfied that the affidavit in this case provided an adequate basis for the District Court judge's finding of probable cause. Indeed, save for evidence of direct observation of defendant transporting the camera to his home, we can conceive of no additional evidence that would serve further to establish a nexus between the items sought in the warrant and the place to be searched.[14]

### III

### Conclusion

A judicial officer confronted with an affidavit in support of a warrant must decide the probable-cause question based on the totality of the circumstances contained therein and in light of common sense and the realities of everyday life. That decision is to be accorded deference by reviewing courts, and in close cases, the validity of the warrant should be upheld.

Thus, in light of this deferential standard and our *de novo* review of the trial justice's probable-cause determination, we hold that, based on the nature of the alleged offense and the instrumentality used in its commission, the District Court judge who issued the warrant had a substantial basis to find that there was probable cause to believe that the defendant would conceal the illicit images at his home.[15]

---

trict Court judge was without a substantial basis to conclude that the images in question would be stored on a digital camera, personal computer, or other data storage device, merely because Det. Camara's affidavit did not describe the camera as being "digital." Simply put, we decline to engage in a hypertechnical examination of the affidavit. *See United States v. Rogers*, 521 F.3d 5, 10 (1st Cir.2008) (declining to narrowly view the word "photos" in a search warrant as only to include "developed print photographs").

14. When pressed at oral argument, defendant could not articulate any facts, other than direct observations, that would establish an adequate nexus.

15. Because we conclude that the search warrant was valid, we need not consider the state's argument that we adopt the "good faith" exception to search warrants promulgated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See also State v. Gomes*, 881 A.2d 97, 105 n. 13 (R.I.2005) (declining to address same); *State*

Accordingly, for the reasons stated in this opinion, we vacate the order of the Superior Court and remand the case for further proceedings consistent with this opinion.

*v. Nunez,* 634 A.2d 1167, 1171 (R.I.1993) (same).