DECISION
On November 30, 2009, the State of Rhode Island (the "State") charged, Mark Barton (the "Defendant"), with unlawful possession of a controlled substance, with intent to distribute, and unlawful manufacture of a controlled substance, both in violation of § 21-28-4.01.1(a)(4)(i). The charges stem from an investigation culminating in the discovery of a marijuana grow operation in the Defendant's basement. Defendant has filed motions to suppress evidence, arguing that the police search violated theFourth Amendment of the United States Constitution and Article I, section 6 of the Rhode Island Constitution. For the reasons set forth herein, the Defendant's motions to suppress are denied.
 I Facts
On December 2, 2008, Detective James Donnelly-Taylor ("Detective Taylor"), of the Narragansett Police Department, obtained a warrant to search and seize information by thermal imaging (the "Thermal Imaging Warrant") for a residence located at 68 Wood Sorrel Trail, Narragansett, Rhode Island (the "Property"). The affidavit in support of the Thermal Imaging Warrant recited the following facts:
On December 17, 2007, Detective Taylor received a telephone tip from a Fairhaven, *Page 2 
Massachusetts police detective stemming from a narcotics arrest. The Massachusetts detective indicated that while he was conducting surveillance of a known drug user he had followed the drug user to Portsmouth, Rhode Island. While in Portsmouth, the Massachusetts detective observed the drug user meet a white male who was operating a motor vehicle with a Rhode Island license plate. After stopping the drug user on his return to Massachusetts, the police serized one ounce of hydroponic marijuana from the drug user's vehicle. The drug user indicated that he had purchased the hydroponic marijuana for three hundred and fifty dollars ($350). In addition, the Massachusetts detective also determined that the drug user's cell phone memory had only one Rhode Island number stored in it, which he provided to Detective Taylor.
Detective Taylor checked the registration of the Rhode Island vehicle which had been provided by the Massachusetts detective and determined that the vehicle was registered to a Tracey Barton (the Defendant's wife). Additionally, a check of the Rhode Island telephone number stored in the drug user's cell phone showed the number was assigned to the Defendant. Town records reflect the Defendant and Tracy Burton as co-owners of the Property.
The affidavit in support of the Thermal Imaging Warrant also stated that Detective Taylor checked the Property's electrical usage records. These records indicated that the Property used an aggregate value of electricity greater than corresponding properties. Although the affidavit does not specify the dates on which the Property used higher levels of electricity, the affidavit in support of the December 2, 2008 "Search Warrant" for the Defendant's cell phone records indicates the search was conducted on November 19, 2008. Additionally, the "Search Warrant" affidavit also indicates that the electric bills for the Property were "off the chart."
On December 8, 2008, Detective Taylor obtained a warrant to search and/or seize (the "Drug Search Warrant") evidence at the Property related to the cultivation of a hydroponic *Page 3 
marijuana grow. The affidavit supporting the Drug Search Warrant contained the same information relating to the December 17, 2007 phone tip, statements of training and experience by Detective Taylor, information relating to electricity usage at the Property, and the results of the thermal imaging conducted on the Property on December 2, 2008.
On December 12, 2008, Narragansett Police Officers, led by Detective Taylor, executed the Drug Search Warrant at the Property. An array of evidence was seized from the property including: 94 adult marijuana plants, 200 seedling plants, various equipment associated with the cultivation of marijuana, 68 grams of marijuana, 14.3 grams of hashish, and 13 assorted handguns, rifles, and shotguns. The Defendant now moves to suppress any evidence obtained from the Thermal Imaging Warrant and the Drug Search Warrant, because he contends both warrants were issued without probable cause. Further, the Defendant also requests certain statements made to the police after the warrants were executed — pertaining to the drugs and paraphernalia seized from the Property — be suppressed as "fruit of the poisonous tree."
 II Standard of Review
The Court begins by noting that, in the case at bar, the search warrant was issued after a police officer submitted a sworn affidavit to a neutral and detached judicial officer, "a requirement envisioned by the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution."State v. Byrne, 972 A.2d 633, 637 (R.I. 2009). "TheFourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution, prohibit the issuance of a search warrant absent a showing of probable cause."See State v. Verrecchia, 880 A.2d 89, 94 (R.I. 2005);see also Super. R. Crim. P. 41(c); State v.Pratt, 641 A.2d 732, 736 (R.I. 1994). The determination of whether or not probable *Page 4 
cause exists is ascertained from the four corners of the affidavit prepared in support of the warrant, and based upon the totality of the circumstances presented in the affidavit. Illinois v.Gates, 462 U.S. 213, 238 (1983); Byrne, 972 A.2d at 638;Pratt 641 A.2d at 736.
 In making this determination, the issuing magistrate must review the affidavit and, based on the facts contained therein, together with the reasonable inferences that may be drawn from those facts, make a practical, commonsense determination as to whether `there is a fair probability that contraband or evidence of a crime will be found in a particular place.' Byrne, 972 A.2d at 638 (quoting Gates, 462 U.S. at 238).
In reviewing a magistrate's probable cause determination, the trial justice is required to provide great deference to the magistrate's decision, so long as there exists a showing of "a substantial basis from which to discern probable cause."State v. Correia, 707 A.2d 1245, 1249 (R.I. 1998);see also Gates, 462 U.S. at 236; Byrne, 972 A.2d 638. In explaining the deferential standard owed to a magistrate's determination of probable cause, the Rhode Island Supreme Court has explained:
 [T]his Court's `after-the-fact scrutiny . . . of the sufficiency of an affidavit should not take the form of de novo review. Rather, we give deference to the issuing magistrate's determination of probable cause and confine ourselves to reviewing whether the magistrate had a substantial basis for his finding of probable cause. Although the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed de novo, a deferential standard of review should be applied when reviewing a magistrate's decision to issue a warrant because the Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant, . . . and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Byrne, 972 A.2d at 638 (internal quotations and citations omitted).[1] *Page 5 
In light of the "`strong preference for searches conducted pursuant to a warrant,'" affidavits must be interpreted in "a realistic fashion that is consistent with common sense, and not subject to rigorous and hypertechnical scrutiny." Id.
(quoting Gates, 462 U.S. at 237). Indeed, "the approach to the probable cause question should be pragmatic and flexible."Verrecchia, 880 A.2d at 94. "Probable cause exists when the affidavit demonstrates in some trustworthy fashion the likelihood that an offense has been or is being committed." United States v.Santana, 342 F.3d 60, 65 (1st Cir. 2003), cert. denied,540 U.S. 1206 (2004).
Moreover, "an affidavit offered in support of a search warrant should not be judged as if it had been drafted by one schooled in the niceties of the law." State v. Nerney,110 R.I. 364, 365, 292 A.2d 882, 883 (1972). The Rhode Island Supreme Court has stated "`[t]he magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit,' and `[i]n doubtful cases, the reviewing court should give preference to the validity of the warrant.'"See Byrne, 972 A.2d at 639 (quoting United States v.Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985)). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v.Ventrresca, 380 U.S. 102, 109 (1965). Finally, the Court notes that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement *Page 6 
officers." Ornelas v. United States, 517 U.S. 690, 699 (1996).
 III Analysis
As a preliminary matter, the Court notes the affidavits provided for the Thermal Imaging Warrant and the Drug Search Warrant contain essentially the same information. The only meaningful difference between the two affidavits is that the Drug Search Warrant contains information about the results of the thermal imaging conducted by the police. In his memorandum, the Defendant asserts the same grounds for suppression of both the Thermal Imaging Warrant and the Drug Search Warrant, namely staleness and lack of probable cause.
A. Thermal Imaging Warrant
Principally, the Defendant contends the evidence acquired from the execution of the Thermal Imager Warrant should be suppressed because the information provided by the December 17, 2007 phone tip was stale when the affidavit was sworn on December 2, 2008. According to the Defendant, "[t]he minimal evidence provided in the affidavit suggests that the information was stale at the time of issuance and stale at the time of execution." See United States v.Snow, 919 F.2d 1458, 1459 (10th Cir. 1990) ("Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."). Second, the Defendant argues the information contained in the affidavit contains mere suspicion, which does not rise to the level of probable cause.
Conversely, the State agues "[t]he key factor in this case is the fact that hydroponic marijuana is seized." According to the State, because the marijuana seized from the drug user was the type of marijuana typically produced from indoor grow operations, it is not unreasonable for the police to believe contraband would still be at the Property almost a year later. *Page 7 
Additionally, the State argues that the information regarding the high electrical usage at the Property provides current information regarding the likelihood of an ongoing indoor marijuana grow. Finally, the State asserts the affidavit provided ample probable cause to support the warrant sought to ascertain whether "higher intensity lighting" was being used at the Property because of: 1) the high level of electricity noted in the defendant's National Grid records; 2) the fact that the hydroponic marijuana was seized by the Fairhaven police in December of 2007 from a known drug user who only briefly visited Rhode Island; 3) that same known drug user met with an individual operating a motor vehicle registered to the defendant's address; and 4) that same known drug user had only one Rhode Island cell phone number stored in his phone which was determined to be the defendant's.
Courts confronted with suppression motions to determine the staleness of information do not "mechanistically, merely count[] the number of days elapsed." United States v. Schaefer,87 F.3d 562, 568 (1st Cir. 1996). "Whether information is stale depends on `the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.'" UnitedStates v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005) (quoting Snow, 919 F.2d at 1460); see alsoSchaefer, 87 F.3d at 568 (noting the factors to be considered are "the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant-and the likely endurance of the information"). "The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation." Id. Further, the potential staleness of information "`is not fatal where the government's affidavit updates, substantiates, or corroborates the stale material.'" SeeUnited States v. Jiminez, 224 F.3d 1243, *Page 8 
1249 (11th Cir. 2000) (quoting United States v. Magluta,198 F.3d 1265, 1272 (11th Cir. 1999).
In this case, all the evidence and information contained in the affidavit indicates that the Defendant was engaged in an ongoing and entrenched activity. In essence, the Defendant argues that the length of time which passed from Detective Taylor's receiving the phone tip until the application for the Thermal Imaging Warrant made the information from the phone tip stale. However, as one court has explained, "[b]y its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time. . . . That is particularly true in the shadowy world of drug dealings."United States v. Nocella, 849 F.2d 33, 40 (1st Cir. 1988). After review, this Court is satisfied the affidavit contains information from which it was appropriate for the police and issuing Judge to infer the Defendant was carrying out a drug operation that would be lengthy, if not indefinite, in duration. Additionally, the Court also notes the residence to be scanned by thermal imaging was the Defendant's dwelling, which suggests there was some permanency to the operation. See United States v.Yates, 132 F.Supp.2d 559, 565 (E.D. Mich. 2001). "In the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Jones,159 F.3d 969, 975 (6th Cir. 1998).
Moreover, as the affidavit indicates, the phone tip to Detective Taylor relayed that the marijuana seized from the drug user was hydroponic marijuana. Cultivation of hydroponic marijuana is an elaborate process which requires a great deal of equipment and planning, including high intensity lighting. The affidavit outlines that "through training and experience the use of large amounts of lighting generates a large amount of heat." At this point in the investigation, the purpose of the Thermal Imaging Warrant was to determine whether the Property was radiating an amount of heat consistent with the use of high intensity lighting required for an indoor marijuana grow. The warrant did not target items of a temporary nature, *Page 9 
but sought heat evidence of a marijuana grow likely to have been operating for some time. Although nearly a year of time passed between Detective Taylor's receipt of the phone tip and the application for the warrant, this passage of time does not necessarily render the information stale. See UnitedStates v. Turner, 431 F.3d 332, 337 (8th Cir. 2005) (finding the information at issue was not stale even though it was a year old);see also United States v. McKeever,5 F.3d 863, 866 (5th Cir. 1993) (holding information need not be as current when the items to be seized include hydroponic marijuana-growing apparatuses).
Here, the passage of time is even less troubling because the affidavit tendered in support of the Thermal Imaging Warrant contained sufficient recent facts to corroborate the phone tip. As previously noted, when an affidavit contains information of a remote nature, "a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present." Schaefer, 87 F.3d at 568. In this case, the affidavit cites to Detective Taylor's probe of the Property's electricity records, which indicated the Defendant's excessive use of electricity was consistent with an indoor marijuana grow. Although the affidavit does not specifically enumerate the dates when the Property's electricity usage was elevated, this flaw is not fatal. See McKeever, 5 F.3d at 866 (noting that in considering staleness, "[t]his Court is not convinced that the lack of specific dates deprived the magistrate of essential information in determining probable cause"). Moreover, the affidavit in support of the "Search Warrant" for the Defendant's phone records, put before the same Judge, clearly indicates the utility comparison occurred on November 19, 2008. As such, the information regarding the Defendant's electricity usage was obtained approximately one month prior to the issuance of the Thermal Imaging Warrant. This recent detail further indicates the Defendant's continuous and systematic cultivation of an ongoing marijuana grow, "thus *Page 10 
rendering the affidavit temporally adequate." SeeSchaefer, 87 F.3d at 568-69; see alsoState v. Spaziano, 685 A.2d 1068, 1069-70 (R.I. 1996) (information was not stale because the affidavit also contained sufficient current information). Based on the foregoing, the Court concludes that the information contained in the affidavit was not stale when evaluated by the issuing Judge.
Applying the deferential standard required, and using a common-sense approach, the Court also finds no error with the issuing Judge's conclusion there was probable cause to issue the Thermal Imaging Warrant. Viewing the totality of the circumstances, it is reasonable for the issuing Judge to have concluded that the Defendant was potentially engaged in the cultivation and sale of marijuana. The affidavit indicated that hydroponic marijuana was seized from a known drug user, that the drug user met with an individual operating a motor vehicle registered to the Defendant's address, that the drug user had but a single Rhode Island cell phone number memorized in his phone which belonged to the Defendant, and that the Defendant's residence was using an inordinate amount of electricity. Thus, the Court holds the information contained in the affidavit established probable cause to believe that evidence of a marijuana grow could be determined by a thermal scan of the Defendant's home. As a result, Defendant's motion to suppress the evidence garnered from the Thermal Imaging Warrant is denied.
B. Drug Search Warrant
As previously discussed, the information contained in the Drug Search Warrant affidavit varied materially from the information in the Thermal Imaging Warrant affidavit only in that it contained information regarding the results of the thermal scan.[2] In this case, the Defendant does not assert any additional grounds for suppression of the Drug Search Warrant other than the staleness and lack of probable cause previously alleged. Accordingly, having found the information contained in the affidavit for the Thermal Imaging Warrant was not fatally stale and *Page 11 
contained adequate probable cause, the Court is similarly that satisfied the same information — together with the results of the thermal scan — was not stale and constituted adequate probable cause for the Drug Search Warrant. As a result, Defendant's motion to suppress the evidence obtained as a result of the Drug Search Warrant is denied.
C. Statement to Police
The Defendant has also moved this Court to suppress certain statements made to the police after he was arrested and brought to the police station for questioning. According to the Defendant, these statements should be suppressed under the "fruit of the poisonous tree" doctrine because the warrants resulting in his arrest were not based on probable cause. See UnitedStates v. Wong Sun, 371 U.S. 471 (1963). However, the Court need not dwell on Defendant's contention in that the Court has already determined the affidavits in support of both the Thermal Imaging Warrant and the Drug Search Warrant were sufficiently current based on probable cause. Accordingly, the Defendant's motion to suppress statements he made to the police while in custody is denied.
 IV Conclusion
Based on the foregoing, the Defendant's motions to suppress evidence obtained from the execution of the Thermal Imaging Warrant and Drug Search Warrant, along with certain statements made by the Defendant to the police are hereby denied.
[1] The United States Supreme Court has discussed the importance to adhering to a deferential standard of review for warrant determinations and stated:
 If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring `the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' Gates, 462 U.S. at 236 (quoting United States v. Chadwick, 433 U.S. 1, 9 (1977).
[2] The thermal scan of the Defendant's home provided a result consistent with an ongoing marijuana grow operation.