# United States Court of Appeals
## For the First Circuit

No. 06-2268

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN BARNES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
Tashima,* Senior Circuit Judge.

Jeffrey M. Brandt, with whom Robinson & Brandt, P.S.C. was on brief, for appellant.
Mary E. Rogers, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Donald C. Lockhart, Assistant United States Attorney, were on brief, for appellee.

June 27, 2007

---

*Of the Ninth Circuit, sitting by designation.

**TASHIMA**, **Senior Circuit Judge**, John Barnes challenges his conviction and the sentence imposed following a jury trial on two drug counts. Barnes contends that the district court erred in concluding that the affidavit submitted in support of a search warrant demonstrated probable cause. He also argues that the evidence is insufficient to sustain his conviction. His final contention is that the district court erred by relying on a prior conviction not proven to the jury beyond a reasonable doubt in imposing his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

I.  BACKGROUND

In January 2005, Providence, Rhode Island, police officer Nicholas Ludovici began surveillance of a residence at 91 Whatcheer Avenue (the "Whatcheer residence") in Providence, where he saw Barnes leave the home and enter a car parked in the driveway. In April 2005, Detective Albert Faella of the Johnston, Rhode Island, Police Department received information concerning Barnes from a confidential informant ("CI") who had proven reliable in the past. The CI told Faella that Barnes was selling crack cocaine in Johnston, described Barnes' car, that Barnes lived at the Whatcheer residence, and that the CI had been in the residence many times. Faella then began conducting surveillance of the Whatcheer residence with Alan Ross, another Johnston police officer.

Ross saw Barnes in the yard of the residence on two occasions in May 2005, and Faella saw him outside the residence on two different occasions in April and May.

On May 5, 2005, the CI told Faella that Barnes was going to 995 Atwood Avenue in Johnston to deliver crack cocaine to a white female at that address, and that Barnes would be driving a white Cadillac Escalade. Faella contacted Ross, who went to the address given by the CI and observed the transaction. After Barnes left, Ross spoke with the woman, who admitted that she had purchased $100 worth of crack cocaine from Barnes. She gave the substance to Ross, and it later tested positive for cocaine.

On May 13, 2005, the CI again contacted Faella to tell him that Barnes was going to make another delivery to 995 Atwood. Faella and Ross went to the Whatcheer residence, where they observed the Cadillac leave the house and followed it to 995 Atwood. After the sale, Faella, Ross, and Johnston police officer Christopher Correia stopped Barnes and arrested him. A white substance, later determined to be cocaine base, was found in the Cadillac when it was searched.

Faella prepared an affidavit in support of an application for a search warrant for the Whatcheer residence. Faella included in the affidavit the preceding facts, as well as a statement that, on May 12, 2005, the CI told Faella that the CI observed a large

quantity of crack cocaine in a coffee can inside the Whatcheer residence.

The search warrant was executed on May 13, 2005. During the search of the residence, the officers found large quantities, consistent with distribution, of crack and powder cocaine. Officers also found a photo of Barnes, two Macy's invoices addressed to John Barnes at the Whatcheer residence, a cable television bill similarly addressed to Barnes, a credit card receipt in Barnes' name, and a Sears sales receipt also with Barnes' name.

Barnes was indicted on one count of possession with intent to distribute 50 grams or more of cocaine base and one count of possession with intent to distribute an unspecified amount of cocaine. Prior to trial, Barnes requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Barnes challenged the truthfulness of the sentence in the search warrant affidavit in which Faella stated that the CI told him that the CI observed a large quantity of crack cocaine in a coffee can at the Whatcheer residence. The district court denied Barnes' request for a Franks hearing, concluding that even if the contested sentence were excluded from the affidavit, the remainder of the affidavit still sufficiently demonstrated probable cause that evidence of drug

trafficking would be found at the Whatcheer residence.[1]  After an initial jury trial resulted in a mistrial, a second jury trial returned guilty verdicts on both counts.  The district court then sentenced Barnes to the statutory minimum term of 240 months' imprisonment.

A.  Franks' Hearing

Barnes contends that the search warrant for the Whatcheer residence was not supported by probable cause and that the district court erred in its denial of an evidentiary hearing to challenge the affidavit supporting the warrant.

A defendant is entitled to an evidentiary hearing under Franks where the defendant "makes a substantial preliminary showing" that both (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-56.  An affidavit demonstrates probable cause to search a locale "where information in the affidavit reveals 'a fair probability that contraband or evidence

---

[1]    The district court did not rule on the first prong of the Franks test: whether Barnes made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  Franks, 438 U.S. at 155-56.  Instead, the district court based its denial of an evidentiary hearing only on the second prong of the Franks test, which requires that "the allegedly false statement is necessary to the finding of probable cause" in order for a hearing to be granted.  Id.

-5-

of a crime will be found in a particular place.'" United States v. Syphers, 426 F.3d 461, 464 (1st Cir. 2005) (quoting United States v. Baldyga, 233 F.3d 674, 683 (1st Cir. 2000)), cert. denied, 126 S. Ct. 2312 (2006).  Thus, we review the search warrant affidavit, without the contested sentence, to determine whether it demonstrated a fair probability of contraband being found at the Whatcheer residence.

We review the district court's denial of a Franks hearing for clear error.  United States v. Materas, 483 F.3d 27, 31 (1st Cir. 2007).  The "district court's ruling is clearly erroneous only if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)).  Thus, in order to prevail, Barnes must make "a substantial preliminary showing" that, but for the challenged paragraph of Detective Faella's affidavit, the remaining portion would not demonstrate probable cause, Franks, 438 U.S. at 155-56, and that the district court's denial of his motion was clearly erroneous.

Barnes argues, first, that the CI was unreliable because the CI predicted that on May 5, 2005, Barnes would drive his Escalade to 995 Atwood to sell crack cocaine to a white female, whereas the substance subsequently recovered by officers tested positive for powder cocaine, not crack cocaine.  Barnes argues that

because the substance tested positive for powder cocaine, rather than crack cocaine, this renders the CI unreliable. However, there is ample additional evidence to support the credibility of the CI, whom the affidavit indicated was "reliable" and had supplied information that led to "numerous" arrests in the past. Indeed, every other aspect of the monitored drug deal occurred as the CI predicted; therefore, Barnes' argument that the CI incorrectly predicted the type of cocaine being sold by Barnes is insufficient to carry the day.

Second, Barnes makes a nexus claim: that there was no probable cause that evidence of Barnes' drug dealing would be found at the Whatcheer residence. Barnes notes that officers only monitored drug sales from his Cadillac Escalade, not the Whatcheer residence, and that Barnes' car is registered at a different address from the Whatcheer residence. Barnes further argues that police only saw him "leave" the Whatcheer residence, rather than actively occupy the home. This court has repeatedly found, however, that when a defendant sells drugs outside his home, it is reasonable to conclude that there is evidence of his drug dealing activity in the home, particularly when the defendant is observed leaving the home immediately prior to selling drugs. See, e.g., United States v. Dessesaure, 429 F.3d 359, 368-69 (1st Cir. 2005) (noting that when the defendant sold drugs to a person from his car, the defendant "had just come from his apartment, making it

likely that the drugs he sold . . . came from the apartment"); United States v. Feliz, 182 F.3d 82, 86-88 (1st Cir. 1999) (holding that where police only observed a defendant selling drugs out of his car, there is still probable cause to search his home, because his home was "a likely place to seek to find incriminating items"); accord United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) (noting that "in the case of drug dealers, evidence is likely to be found where the dealers live").

Thus, to determine the sufficiency of the affidavit, excluding the contested sentence, we look to "whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search either the premises or the person." United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Here, given both that the CI stated that Barnes lived at the Whatcheer residence and that the police observed Barnes exit the Whatcheer residence, drive away, and sell drugs on the day of his arrest and the search, the totality of the circumstances strongly suggested that there was evidence of drug dealing at the Whatcheer residence.

Finally, Barnes argues that Faella's affidavit, without the contested sentence, makes a claim that is impossible, undermining a finding of probable cause. Barnes notes that on the day of his arrest, the CI told Faella that Barnes was "on his way" to 995 Atwood in Johnston, from the Whatcheer residence in

Providence, to sell drugs. Barnes argues that if he were "on his way" to Johnston, it is impossible that Faella himself responded from Johnston to the Whatcheer residence, a seven-minute drive from Johnston, in time to observe Barnes depart, as Faella affirms in the affidavit. However, "the law tells us that we are to read descriptions in warrants (and in their supporting documents), not 'hypertechnically,' but in a 'commonsense' fashion." United States v. Gendron, 18 F.3d 955, 966 (1st Cir. 1994). Here, Barnes' reading of the search warrant affidavit amounts to a hypertechnical parsing of the phrase "on his way," where a more commonsense reading of the phrase is that Barnes was about to leave, although not yet in transit.

Thus, the supporting affidavit, even without the contested sentence, demonstrated that there was a fair probability that evidence of drug dealing would be found at the Whatcheer residence, because Barnes had been seen exiting that residence en route to deliver drugs and because a reliable CI stated that Barnes sold drugs and lived at the Whatcheer residence. The single contested sentence does not undermine this conclusion. Therefore, the district court properly denied Barnes' motion for a Franks hearing.

B.  Sufficiency of the Evidence

Barnes also argues that there is insufficient evidence to support the verdict.  Ordinarily, a sufficiency of the evidence challenge requires us to review

> whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  All reasonable evidentiary inferences are to be drawn in harmony with the [jury's] verdict, and all issues of credibility are to be resolved in the light most favorable to the government.

United States v. Rodriguez-Ortiz, 455 F.3d 18, 22 (1st Cir. 2006) (alteration in original) (internal citations and quotation marks omitted), cert. denied, 127 S. Ct. 1010 (2007).  Barnes, however, failed to move for judgment of acquittal at the close of the government's case, after the defense case, or following the verdict, pursuant to Federal Rule of Criminal Procedure 29.  As such, our review of this un-preserved sufficiency claim is subject to a more limited review – for "clear and gross injustice."  United States v. Maldonado-Garcia, 446 F.3d 227, 230-31 (1st Cir. 2006). Because  Barnes' un-preserved sufficiency challenge fails to meet even the more lenient standard for a preserved challenge, it necessarily also fails to meet the "clear and gross injustice" standard.  See United States v. Gobbi, 471 F.3d 302, 308-309 (1st Cir. 2006).

The core of Barnes' argument is that there was insufficient evidence to prove that he actually or constructively possessed the drugs found at the Whatcheer residence. Extensive evidence, however, links Barnes to the Whatcheer residence. First, Barnes was twice observed by police at the Whatcheer residence, once leaving the side door in January 2005, and again on April 27, 2005. Second, Barnes was observed exiting the Whatcheer residence on May 13, 2005 – the day of the search – to enter his car, in which officers subsequently discovered crack cocaine. Third, Barnes himself told Faella upon his arrest that he was coming from his house at 91 Whatcheer. Fourth, when officers conducted the search of the Whatcheer residence later that day, no one else was present in the single-family home, and documents found in the residence tied Barnes to the home, including a cable television bill addressed to Barnes at the Whatcheer residence.[2] Finally, subsequent investigation confirmed that the cable service at the Whatcheer residence had been in Barnes' name for the past four years.

Taken together, all of this evidence easily gives rise to the reasonable inference that Barnes resided at the Whatcheer residence, and possessed the drugs found there. In response, Barnes mounts a credibility attack and suggests further

_____

[2] Police also found: a photo of Barnes, two Macy's invoices addressed to John Barnes at 91 Whatcheer, a credit card receipt in Barnes' name, and a Sears sales receipt with Barnes' name.

-11-

investigative steps officers might have taken to prove that Barnes resided at the Whatcheer residence.  When evaluating a sufficiency claim, however, "we may neither evaluate the credibility of the witnesses nor weigh the relative merit of theories of innocence postulated by the defendant."  Maldonado-Garcia, 446 F.3d at 231. Thus, given Barnes' own admission that he lived at the Whatcheer residence, the multiple observations by police of Barnes at that address, and the extensive documentary evidence found in the residence linking Barnes to the residence, we conclude  that any rational trier of fact could have found beyond a reasonable doubt that Barnes resided at the Whatcheer residence.

C.  Sentencing Challenge

Barnes raises a constitutional challenge to the use of a prior conviction not proven to the jury in determining his sentence, relying on three recent Supreme Court decisions, Shepard v. United States, 544 U.S. 13 (2005); United States v. Booker, 543 U.S. 220 (2005); and Blakely v. Washington, 542 U.S. 296 (2004). This court, however, continues  to interpret Almendarez-Torres v. United States, 523 U.S. 224 (1998), as permitting a criminal history exception.  See United States v. Jimenez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006)(en banc).  This argument is, therefore, unavailing.

III.  Conclusion

For the foregoing reasons, the judgment of conviction and the sentence are

AFFIRMED.