**Supreme Court**

No. 2010-225-C.A.
(P2/07-4140A)

State                          :

    v.                         :

Geronimo Cosme.                :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State　　　　　　　　　　　：

v.　　　　　　　　：

Geronimo Cosme.　　　　　：

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**　The defendant, Geronimo Cosme, appeals from a judgment of conviction for possession of cocaine with the intent to deliver and for possession of cocaine in an amount between one ounce and one kilogram.　Specifically, the defendant challenges the denial of his motion to suppress evidence seized from his home, arguing that the affidavit underlying the warrant did not provide the requisite probable cause to support a search of his residence.　In support of his argument, he contends that the affidavit not only failed to establish a nexus between the alleged unlawful conduct and his home, but also that the confidential informant (CI), upon whom the affiant depended, was not reliable and had no established basis of knowledge nor sufficient veracity to justify issuing a search warrant for the defendant's residence.　For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On July 27, 2007, David Silva, a narcotics detective for the Pawtucket Police Department, executed a search warrant at defendant's residence, located at 111 Freight Street,

Apartment 4, in the City of Pawtucket.[1]  A search of the apartment produced the following evidence: Under defendant's bed was an unlocked, metal safe that contained 1.10 ounces (31.29 grams) of cocaine packaged in a clear plastic bag, a black digital scale, a box of plastic sandwich bags, a calculator, two bottles of super inositol,[2] scissors, two cell phones,[3] defendant's personal papers, and $718 in cash.  In defendant's bedroom closet was a gray metal safe containing more of defendant's personal papers, including various bills, a Social Security card, a resident alien card, tax information, and various pieces of mail.  Also, defendant's driver's license was discovered on a bedroom bureau.

The defendant was subsequently charged by information with possession of cocaine with intent to deliver (count 1), possession of cocaine in an amount between one ounce and one kilogram (count 2), distributing and/or manufacturing cocaine within three hundred yards of a school (count 3), and maintaining a narcotics nuisance (count 4).[4]  Before the trial commenced, defendant moved to suppress the evidence seized from his residence, alleging that the warrant failed to establish probable cause to justify the search of the apartment because there was "no nexus between the controlled buy described in the search warrant affidavit and the premises searched."

At a hearing on May 12, 2009, Det. Silva testified that the execution of the search warrant for defendant's residence "was the culmination of an illegal street distribution of

---

[1] The three-story apartment building located at this address contains approximately thirty-six separate apartments.

[2] Detective Silva explained that "[s]uper inositol is [a] B complex powder supplement * * * used by narcotics traffickers * * * as a cutting agent to multiply their quantity of cocaine."

[3] According to Det. Silva, based upon his training and experience, "those who traffic narcotics have two phones; one to maintain for their narcotics business, and the other for daily activities."

[4] Prior to trial, the state dismissed counts 3 and 4 pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

cocaine." The affidavit upon which the search warrant was based reads, in pertinent part, as follows:

> "[Detective Silva] received information from confidential informant(s) concerning the illegal street distribution of [cocaine]. The information described the target to be a black male distributing [cocaine] from 111 Freight Street apartment #4 in the city of Pawtucket, Rhode Island. After further investigation, it was revealed that the male in question was identified as Geronimo Cosme * * *. Based on the information and the investigation, the aforementioned activity occurs primarily during the nighttime hours. Also, in the course of the investigation, [Det. Silva] has determined through police records, license records, and surveillance that Geronimo Cosme * * * lives at 111 Freight Street apartment #4 in the City of Pawtucket, Rhode Island. Furthermore, [Det. Silva] has conducted surveillance on Geronimo Cosme and observed him in R.I. reg. OY-275 on a black Chrysler Concorde making short stops meeting different people at various discreet locations consistent with street level distribution of narcotics. Also, consistent with the information provided by our confidential informant(s) (CI).
>
> "On or between July 21, 2007 and July 27, 2007 the members of the Pawtucket Police Department Special Squad Unit met with a confidential informant(s) (CI). The CI was searched for contraband with negative results before being provided with Official City of Pawtucket Funds. The CI was instructed to attempt to make contact with Geronimo Cosme * * *. The CI was instructed by Cosme to meet at a prearranged location. Under the surveillance of members of the Special Squad, the CI met with a black male whom the CI positively identified as Geronimo Cosme * * *. The CI then purchased a quantity of white rock like substance from Geronimo Cosme * * * in exchange for Official City of Pawtucket funds. The CI then left the area and responded to a prearranged location under the surveillance * * *."

After hearing arguments from the state and defendant, the trial justice denied defendant's motion to suppress. A bench trial commenced later that same day, which resulted in a finding of guilt on

- 3 -

both of the remaining counts.[5] The defendant's sentencing hearing was held on July 9, 2009, and for each count he was sentenced to ten years at the Adult Correctional Institutions, with fourteen months to serve and 106 months suspended, with probation. A judgment of conviction was entered on September 14, 2009, from which defendant has appealed.[6]

## II

### Standard of Review

"When reviewing a trial justice's decision granting or denying a motion to suppress, 'we defer to the factual findings of the trial justice, applying a clearly erroneous standard.'" State v. Storey, 8 A.3d 454, 459-60 (R.I. 2010) (quoting State v. Flores, 996 A.2d 156, 160 (R.I. 2010)). "Our review of 'a trial justice's determination of the existence or nonexistence of probable cause' necessitates de novo treatment." Id. at 460 (quoting Flores, 996 A.2d at 160). This Court must, however, accord great deference to the trial justice's probable-cause determination, "so long as there is a showing of 'a substantial basis from which to discern probable cause.'" Id. (quoting State v. Byrne, 972 A.2d 633, 638 (R.I. 2009)).

## III

### Discussion

On appeal, defendant argues that the trial justice erred in denying his motion to suppress the evidence discovered by the police during a search of his residence because the affidavit upon which the search warrant was predicated did not demonstrate the requisite probable cause to

---

[5] Before the start of the trial, defendant renewed his objection to the denial of his motion to suppress. He requested a continuing objection during the testimony of Det. Silva, the only witness in this case, and he also reasserted his objection after the state rested its case.

[6] The defendant filed his appeal on July 9, 2009, before entry of the judgment of conviction on September 14, 2009. This Court, however, will treat defendant's appeal as timely because we have stated previously that we "will treat a premature appeal as if it had been timely filed." Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011) (quoting Bleau v. State, 968 A.2d 276, 278 n.1 (R.I. 2009) (mem.)).

support the warrant. Specifically, defendant argues that "the affidavit failed to provide direct or indirect facts from which reasonable inferences could be drawn that the instrumentalities of an alleged crime could be found * * * in [defendant's] home rather than his car." He also contends that "there is no information contained in the affidavit by which a magistrate could determine the [confidential] informant's veracity or reliability."[7]

## A

### The Nexus Between the Unlawful Conduct and the Place to be Searched

The defendant avers that "[t]he fundamental flaw in th[e] affidavit [supporting the search warrant for his residence] is that it does not explain why there was probable cause to believe that drugs or drug paraphernalia would be found at [his residence]." He contends that the information provided by the CI supports probable cause that drug dealing activities were taking place only from his vehicle, not from his home, because it lacks any "first-hand accounts of criminal activity connected to the home, [any] third-party information tying criminal activity to the home, [or any] demonstrable familiarity with the home or the activities of its inhabitants." He further maintains that the subsequent observations of Det. Silva do not establish probable cause since "[t]here are no specific allegations, or particularized information based on police surveillance, that the defendant [was] likely to keep drugs or drug paraphernalia in his home." Moreover, although recognizing that direct evidence is not necessary for a magistrate to find probable cause, defendant avers that "the affidavit in this case is devoid of even the more general information [that c]ourts have turned to" to establish a nexus "between a defendant's drug dealing and [his or her] home." Lastly, he postulates that the mere fact that a person is believed

---

[7] The defendant further argues that the "good faith" exception to search warrants, as promulgated in United States v. Leon, 468 U.S. 897, 913-17 (1984), does not appy to his appeal. However, we need not reach this argument because we hold that the affidavit in this case does establish the requisite probable cause for the warrant at issue.

to be a drug dealer, without more, does not furnish probable cause to expect that drugs would be found in his or her home.

The defendant cites State v. Pratt, 641 A.2d 732, 737 (R.I. 1994), to support his contention that the affidavit in his case lacked probable cause. He argues that probable cause was established there because "the informant lived in the same residence as the defendant and packaged and purchased drugs there," but that, in his case, the police did not observe defendant "in or near his residence," nor was his vehicle connected to his home. Therefore, according to defendant, probable cause to search his residence was lacking. He also attempts to distinguish his case from State v. Verrecchia, 880 A.2d 89, 96, 97 (R.I. 2005), in which a CI gave the police an exact location of where the illegal contraband was being stored, as well as the defendant's telephone number, which was used to call the defendant and complete an undercover buy. According to defendant, the police in Verrecchia made direct observations that verified the CI's tip and "established facts by which a magistrate could infer that evidence of contraband was likely to be located in [the place where the CI reported that it was being stored]." The defendant states, in his brief, that:

> "In stark contrast to the careful and diligent police investigation in State v. Verrecchia, the * * * police detectives in [defendant's] case reported no surveillance, monitoring, or any police legwork that resulted in facts by which a reviewing court might infer a nexus existed between [defendant's] alleged vehicle drug dealing and his home."

Further, defendant attempts to distinguish his case from both United States v. Barnes, 492 F.3d 33, 37 (1st Cir. 2007), and United States v. Angulo-Lopez, 791 F.2d 1394, 1398, 1399 (9th Cir. 1986) (both holding that there was a nexus between the drug dealing activity and the defendants' homes from which they had been observed leaving)—cases that the trial justice relied upon in finding that probable cause existed within the affidavit. The defendant argues that

- 6 -

the trial justice based his denial of defendant's motion to suppress "on a statement borrowed from case law rather than on an examination of the evidence[—]and lack of evidence[—]in the affidavit before him." The defendant contends that "the Barnes Court arrived by deduction at its conclusion after a logical and inferential examination of the facts present in the affidavit," whereas the trial justice in this case merely "relied upon the bare conclusion that street level drug dealers store their wares in their homes." He posits that the affidavit in his case is different from the one in Barnes because

> "[t]he informant [here], unlike the Barnes informant, did not observe drugs inside the residence, or profess familiarity with the inside of the residence, or even describe [defendant] by name, or provide details or description of [defendant's] car. No reports were made in the affidavit that [defendant] was observed outside of the residence, or that he left the residence directly before selling drugs, or that drug paraphernalia or residue was discovered [near his residence], or that the extent of his drug dealing was such that the accumulation of proceeds would demand a safe and accessible hiding place."

The state counters that probable cause was properly established within the four corners of the affidavit and that the trial justice did not err in his determination that the search warrant was valid. The state, quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999), argues:

> "[I]t is absurd to believe that an individual who deals drugs from his car is storing his entire supply, along with the requisite records and paraphernalia, in the vehicle; instead, it is entirely logical to infer that such contraband and the accompanying evidence will be found in a 'safe yet accessible place,' namely, the suspect's home."

"The Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution, prohibit the issuance of a search warrant absent a showing of probable cause." Byrne, 972 A.2d at 637 (quoting Verrecchia, 880 A.2d at 94). "Probable cause must be ascertained within the four corners of the affidavit prepared in support of the warrant

* * * and based on the totality of the circumstances presented in the affidavit." Id. at 638. "In making this determination, the issuing magistrate must review the affidavit and, based on the facts contained therein, together with the reasonable inferences that may be drawn from those facts, make a practical, commonsense determination as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "'The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit,' and '[i]n doubtful cases, the reviewing court should give preference to the validity of the warrant.'" Id. at 639 (quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985)).

In Byrne, this Court stated that "'[t]he requisite nexus between the criminal article or activity described in the affidavit and the place to be searched need not be based on direct observation.' * * * Rather, it 'may be found in the type of crime, the nature of the * * * items [sought], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [items of the sort sought in the warrant].'" Byrne, 972 A.2d at 640 (quoting Commonwealth v. Anthony, 883 N.E.2d 918, 926 (Mass. 2008)). The defendant, quoting Byrne, 972 A.2d at 641, however, attempts to distinguish his drug-dealing case from Byrne, a video voyeurism case, by stating that, "[u]nlike drug dealing which often takes place in public on the open street and often involves multiple public interactions between various individuals, child pornography is by its very nature 'a solitary and secretive crime.'" He further contends that "[g]iven the public, recurring, and non-solitary character of drug dealing, the 'nature of the crime' analysis which guided th[is] Court in Byrne is inapplicable to the facts of this case."

The trial justice stated:

"The fact that in [Barnes and Angulo-Lopez] there is a distinguishing factor that the defendant was seen coming from the residence does not necessarily mean in all instances the suspect has to have come from the residence in order to raise antennae in the eyes of the experienced police officer, particularly where an informant was proven to be reliable, as the informant here was.

"* * * The [Barnes] Court goes on to say, 'This Court has repeatedly found, however, that when a defendant sells drugs outside his home, it is reasonable to conclude that there is evidence of this drug dealing activity in the home.' * * *

"Although that factor is absent in the instant case, that language is nonetheless instructive, as is the language in the Angulo[-Lopez] case * * *. The Court says, 'Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location. A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live.'"

We concur with the analysis of the trial justice. Drugs must be stored and secreted, and we are of the opinion that the trial justice made a reasonable inference when he stated "that a drug dealer keeps his narcotics and * * * the paraphernalia for packaging for sale of such narcotics[] secreted in his residence." Here, the affidavit explicitly states that the CI reported the distribution of cocaine by a black male from 111 Freight Street, Apartment 4 in Pawtucket. The police then investigated and determined that the male described was defendant and that defendant resided at that address. Although not stating that the police directly observed defendant enter and exit this apartment to go sell drugs from his vehicle, we conclude that the totality of the circumstances presented within the affidavit was sufficient to enable the magistrate to reasonably infer that illegal contraband would be found in defendant's residence. Therefore, we find no error in the trial justice's determination "that the affidavit is sufficiently strong to support a finding of probable cause to search the residence of this defendant."

**B**

**The Reliability of the Confidential Informant**

The defendant argues that the affidavit does not contain any information by which a magistrate could determine the CI's veracity or reliability because it does not state the basis of the CI's knowledge or history of reliability or set out the time frame for when the tip was received in comparison to when the investigation took place. Moreover, defendant alleges that "the use of an informant to conduct a controlled buy does not solve the affidavit's deficiencies because the confidential informant who participated in the controlled buy appears, again, to lack any indicia of reliability." Additionally, he contends that, because the affidavit did not state the date that the CI provided the tip, the information provided by the CI should be considered stale, and therefore, deficient as a basis upon which to make a probable cause determination.

"It is well settled that, under the totality-of-the-circumstances test, 'an informant's veracity, reliability, and basis of knowledge remain highly relevant.'" State v. King, 693 A.2d 658, 661 (R.I. 1997) (quoting State v. Ricci, 472 A.2d 291, 295 (R.I. 1984)). "A deficiency in veracity or reliability, however, 'may be compensated for * * * by a strong showing as to the [basis of knowledge], or by some other indicia of reliability.'" Id. (quoting Gates, 462 U.S. at 233). "The totality-of-the-circumstances approach also recognizes the probative value of the 'corroboration of details of an informant's tip by independent police work.'" Id. (quoting Gates, 462 U.S. at 241).

To determine a search warrant's validity, "we examine whether there was 'a substantial basis from which to discern probable cause' from the 'totality of the circumstances' found within 'the four corners of the affidavit prepared in support of the warrant.'" Storey, 8 A.3d at 461 (quoting Byrne, 972 A.2d at 638). "Although each piece of information may not alone be

- 10 -

sufficient to establish probable cause * * *, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers.'" Id. at 462 (quoting State v. Schmalz, 744 N.W.2d 734, 738 (N.D. 2008)).

In the case under review, the detective received a tip from a CI that a black male was selling cocaine from 111 Freight Street, Apartment 4, in Pawtucket. A police investigation ensued, which revealed that the "black male" was defendant and that defendant did live at the address provided by the informant. Further, Det. Silva observed defendant driving around, making short stops with different people at different, discreet locations, primarily at night, which the detective stated was "consistent with street level distribution of narcotics." Although defendant argues that the detective's observations "seem[] to disprove the [CI's] tip – i.e. showed no evidence of any drug dealing from 111 Freight Street," we are satisfied that the detective's observations supported the CI's veracity, reliability, and basis of knowledge because they confirmed that defendant probably was selling drugs, as was alleged by the CI in the original tip.

The CI's tip, however, is not the only evidence of defendant's drug activity within the affidavit that the magistrate had before him when he made his probable-cause determination. The affidavit states that the detective also set up a controlled buy, which resulted in the observation of defendant selling cocaine directly to the CI. Whether the person involved in the controlled buy was the same person who provided the initial tip to the police is irrelevant to the finding of probable cause. As the trial justice stated:

> "If it's the same informant, so much the better for the State, because a controlled buy was accomplished. If it was a different informant, that in no way diminishes the reliability of the initial informant. In fact, what it does is corroborate what the initial informant said * * *; namely, that this fellow was selling drugs. Either way, whether it's the same informant or a different one, it

- 11 -

> proves out the reliability of the information that the police originally received. * * *
>
> "* * * I recognize * * * that [the vehicle] was not identified in the affidavit as parked at the residence, or that there was any drug activity flowing directly from the residence by way of description in the affidavit, but, * * * reasonable inferences are entitled to be drawn under the totality of the circumstances by the issuing magistrate. And, I think it is a fair inference to be drawn that a drug dealer keeps his narcotics and indeed the paraphernalia for packaging for sale of such narcotics, secreted in his residence."

We perceive no error in the trial justice's determination that the CI's tip was properly corroborated or that this corroborated tip, combined with defendant's recent sale of cocaine in a controlled buy, satisfied the probable cause requirement to support the warrant which authorized the search of defendant's residence.

Additionally, the defendant's argument that the undated tip presented "the possibility that the information received by the Detective was stale by the time the cursory investigation began" is unavailing. The affidavit states that the controlled buy, in which the defendant directly was observed by the police selling cocaine to the confidential informant, took place on a date between July 21, 2007, and July 27, 2007. The warrant was authorized, issued, and executed on July 27, 2007. In Storey, 8 A.3d at 462, we held that "the combination of an older tip, plus fresh evidence discovered close in time to the warrant application was sufficient to show that the tip was not stale and to establish probable cause." Even assuming the initial tip had withered, it obtained new growth when the police observed the defendant selling cocaine to the CI within one week of the application for the warrant. As such, we are satisfied that the recent controlled buy obviated any concern about the timeliness of the initial tip.

- 12 -

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

The record of this case shall be remanded to the Superior Court.



**TITLE OF CASE:**          State v. Geronimo Cosme.

**CASE NO:**          No. 2010-225-C.A.
                               (P2/07-4140A)

**COURT:**          Supreme Court

**DATE OPINION FILED:**   December 14, 2012

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                               Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                               For State:    Jane M. McSoley
                                                Department of Attorney General

                               For Defendant:  Lara E. Montecalvo
                                                Office of the Public Defender